YOUNG *v.* SHEPARD'S ESTATE.[1]

BILLS AND NOTES—CONSIDERATION—FRAUD—EXECUTORS—SETTLE-MENT—EVIDENCE.

*1. A promissory note imports a valid consideration, and, its execution being admitted, the *onus* is cast upon the maker to show its invalidity.

2. The maker was dead. The executor of her estate called the payee as his own witness to show fraud and misrepresentation on her part in securing the note, and want of consideration. *Held*, that her testimony failed to establish the defense.

---

[1] Rehearing denied September 16, 1900.

* Head-notes by GRANT, J.

3. That the maker and payee, at the special request of the maker, kept the giving of the note secret, and that the maker did not notify her co-executor of her husband's estate that she had given the note in settlement of litigation against the payee and her husband's estate, are not badges of fraud, especially in view of the fact that she gave other personal notes without informing him.

Error to Kent; Adsit, J.   Submitted January 31, 1900. Decided July 7, 1900.

Owen Young presented a claim against the estate of Dorinda N. Shepard, deceased, upon a promissory note. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant for less than the amount claimed, he brings error.   Reversed.

Plaintiff's claim is based upon a promissory note for $8,000, dated March 4, 1895, payable to Alice G. Lockerby on or before October 15, 1898.   It was assigned by her before due to plaintiff, who is her brother.   Five payments were made upon this note, the last one dated July 6, 1896, aggregating $1,400.   This note was given in renewal of another for $9,900, given by Mrs. Shepard to Mrs. Lockerby, dated May 9, 1893, upon which $2,000 had been paid.   Mrs. Shepard died November 26, 1896. The jury gave a verdict for plaintiff for $500.

The due execution of the note is admitted.   Plaintiff made his case by introducing it in evidence.   The defense is that the note was without consideration, and was obtained by fraud and misrepresentation on the part of Mrs. Lockerby, and that plaintiff is not a *bona fide* holder.

Mrs. Lockerby purchased from Dr. Shepard, the husband of Mrs. Shepard, certain real estate and other property in the city of Grand Rapids, October 10, 1892, the purchase price being $200,000, and received a deed, November 12, 1892.   Dr. Shepard had leased the real estate to one Hartman.   Hartman had defaulted in payments, and had given to Dr. Shepard a chattel mortgage

for $26,000. Hartman had failed, and had made an assignment for the benefit of his creditors, the assignee being at the time of the purchase in possession. Thirty thousand dollars of the purchase price was paid down, and a mortgage given for the balance. The deed was given subject to the Hartman lease. By the agreement between Dr. Shepard and Mrs. Lockerby, she was to bear all expenses of obtaining possession of the property. By the lease, Hartman agreed to pay all general and special taxes and insurance. Dr. Shepard proved a claim against the estate of Hartman of $87,753.18. On December 9, 1892, the assignee brought suit in equity against Dr. Shepard and Mrs. Lockerby, charging that the lease, and the lien created thereby, and the chattel mortgage assigned to Mrs. Lockerby, were fraudulent and void as to Hartman's creditors. The court enjoined Mrs. Lockerby from taking any steps to forfeit the Hartman lease, or from interfering with the assignee's possession. The bill charged fraud upon Dr. Shepard in procuring the mortgage from Hartman, and asked for an accounting between Shepard and Hartman. Dr. Shepard died March 8, 1893, and the suit was revived in the name of Mr. Mark Norris and Mrs. Shepard, the executors of his will. The chattel-mortgage stock was sold by order of the court, and the proceeds, amounting to over $13,000, paid into the court. The assignee meanwhile collected rents, but paid none. On May 9, 1893, the litigation was settled in pursuance of the following agreement:

"It is mutually agreed that the suit now pending in the circuit court for the county of Kent, in chancery, between the undersigned John Widdicomb, assignee of Carroll S. Hartman, and the undersigned Alice G. Lockerby, be settled upon the following terms, to wit:

"*First.* All rents heretofore collected, or now past due and uncollected, up to May 1, 1893, of the property heretofore leased by Charles Shepard to the said Carroll S. Hartman, shall be and belong to the said John Widdicomb, as assignee of the estate of said Carroll S. Hartman, and the said· Alice G. Lockerby hereby waives all

claim thereto, or to any other moneys now or hereafter in the hands of the assignee, except as hereinafter specified, whether said claim be by virtue of any lien, or as a creditor of the estate of said Carroll S. Hartman, or otherwise, and she hereby transfers to said John Widdicomb all right, title, claim, or interest therein or thereto; and she further agrees to pay said assignee, on the execution and delivery hereof, the sum of three hundred and fifty dollars.

"*Second.* The said John Widdicomb receives the same in full settlement of said suit and any and all claims against the said Alice G. Lockerby, or the premises purchased by her of Chas. Shepard, or the buildings standing thereon, or personal property covered by lease bearing date May 1, 1890, between Charles Shepard and wife and Carroll S. Hartman, and chattel mortgage, which has not already been sold, except the rents and moneys as provided.

"*Third.* The said Alice G. Lockerby shall receive the sum of thirteen thousand four hundred sixty-seven and 20-100 dollars, being the moneys paid on the sale of property heretofore had by said assignee under the order of the court. She shall retain the notes, pledges to Charles Shepard, and all moneys heretofore collected thereon.

"*Fourth.* The suit in chancery now pending in the circuit court for the county of Kent, in chancery, shall be discontinued, without costs to either party.

"It is mutually agreed and understood that the lease bearing date May 1, 1890, is hereby canceled, and is of no further force and effect.

"This agreement shall be binding on the parties when approved by the judge of the circuit court for the county of Kent.

"It is understood that this contract is a mutual settlement of all matters between the parties hereto.

"JOHN WIDDICOMB, Assignee.
"ALICE G. LOCKERBY.

"We hereby approve the above contract.

"BUTTERFIELD & KEENEY, Solrs. for Complt.
"EDWIN F. UHL, Counsel for Complt.
"TATEM & JUST, Solrs. for Deft. Lockerby."

The original note, dated at the same time as was this agreement, was evidently a part of the transaction, and a consideration for Mrs. Lockerby's executing it.

*Taggart, Ganson & Taggart,* for appellant.

*Crane, Norris & Stevens,* for appellee.

GRANT, J. (*after stating the facts*). Counsel for plaintiff contend that there is no evidence of fraud, misrepresentation, or want of consideration. This presents the principal issue, and renders necessary careful examination of the circumstances surrounding the transaction, and the testimony of a large record. The note itself imports a valid consideration, and, its execution being admitted, the *onus* is cast upon the defendant to show its invalidity. It could only do this by making Mrs. Lockerby its witness, as she and Mrs. Shepard were the sole witnesses to the execution of the note and the consideration for it. There is no pretense that Mrs. Shepard was not competent to execute it. She wrote it herself. She recognized the validity of the first note by making payments thereon, and finally by taking it up, and giving another in its place, and by making five payments upon that. Thus, for more than three years she did not question the note, but by solemn acts recognized its validity. She executed the deed to Mrs. Lockerby, and was one of the executors of her husband's will, and it is a just conclusion that she was familiar with the entire situation. There is no evidence that she was not. The jury found the original and renewal notes valid to the extent of $3,900, of which $3,400 had been paid by Mrs. Shepard during her lifetime; the verdict being for the other $500. How they reached this is a matter of conjecture.

Defendant seeks to limit the consideration to the rents received by the assignee and Mrs. Lockerby's payments to her attorneys. Defendant's counsel concede in their brief that the gross receipts of the assignee while he held possession were $4,684.54. They claim the expense of the assignee during that time was $1,944.05, leaving a net balance of $2,740.49; to which add the attorney's fees, and the total would be $3,709.58. But why should Mrs. Lockerby pay the assignee for collecting these rents, and taking care of the property, when she herself, under the claim of the defendant, was entitled to the possession of the property and to the collection of the rents? If this be

the theory of the verdict, I see no reason why Mrs. Lockerby was not entitled to a verdict for $5,653.63 and interest, less what Mrs. Shepard had paid her. This would entitle her to a verdict of $2,253.63 and interest. In one of defendant's requests to charge, which was given, counsel state their claim on this point as follows:

"The defendant claims that the gross rents of the property from October 10, 1892 (the date of Alice G. Lockerby's proposition to purchase), down to May 10, 1893 (the date when the litigation was settled and the property given into her possession), amounted to $4,666.38, or, including doubtful items, $5,202.98, and that the net rents for the same period were only $2,722.87. It is further claimed by the defendant that the law bills paid by Alice G. Lockerby on account of litigation did not exceed the sum of $625. And it is claimed by the defendant that, in any event, Alice G. Lockerby would not be entitled to recover on account of the note any more than the total of her law bills and the rents which she had lost on account of the litigation, less the payments which Dorinda N. Shepard made upon the note, which payments the evidence shows amount to the sum of $3,300."

There is no testimony to show that the charges of the assignee for collecting rents were to be deducted. Mrs. Lockerby had evidently expended all her means in the purchase of this property. She was unable to make her payments without its possession and the income therefrom. Her attorney had advised her that the estate of Mr. Shepard ought to pay something to secure a settlement. Both she and her attorney had tried to induce Mr. Norris, the principal executor of the estate, to thus assist in a settlement, but he declined, claiming that the estate was not liable. But, notwithstanding his opinion, the injunction was retained by the court for seven months against strenuous efforts to dissolve it. Mrs. Shepard was an executrix and the devisee of a large amount under her husband's will. The bill filed by the assignee charged her husband with fraud. It was not only laudable, but legal, for Mrs. Shepard to pay money or give her note to effect a settlement, close the litigation, and release the

estate from the expense of litigation. She knew that her co-executor declined. She chose, therefore, to do it herself.

While it is true that Mrs. Lockerby was unable to state the exact amounts which went into the note, five or six years afterwards, I think it entirely clear that Mrs. Lockerby made no false representations, and that Mrs. Shepard fully understood the situation, and voluntarily gave this note to compensate her for losses and to end the litigation. It was argued to the jury, and is argued here, as a suspicious circumstance, that this settlement was made by these women without the knowledge of, or consultation with, their attorneys, and that they kept the settlement secret. Mrs. Lockerby testified that Mrs. Shepard expressly requested her to keep the matter secret. There is nothing suspicious in their doing so, especially in the face of the fact, testified to by Mr. Norris, that 14 other notes were presented against Mrs. Shepard's estate, of which he had no notice or knowledge until they were presented for probate. Such circumstances are not badges of fraud. I think it manifest that Mrs. Lockerby lost in the transaction the full amount of the note. But, whether this be so or not, the main point was the settlement of the litigation, and getting the property of all the parties out of the courts, and saving the expense of further litigation.

A full statement of the testimony would make this opinion of unnecessary length, and be of no benefit to the profession. I think the court should have directed a verdict for the plaintiff. This disposal of the case renders it unnecessary to discuss the other assignments of error.

Judgment reversed, and new trial ordered.

The other Justices concurred.