## VEENSTRA v. ASSOCIATED BROADCASTING CORPORATION.

### FOX v. SAME.

1. Licenses—Blue-Sky Law—Finding of Jury—Sellers as Agents of Purchasers.

In stock purchasers' statutory action of assumpsit against sellers of unvalidated stock, evidence supported jury's finding that in an attempt to effect an exchange of such stock for other stock also unvalidated, such sellers were not acting as plaintiffs' agents in attempting to effect the exchange.

References for Points in Headnotes
[1-3] 47 Am. Jur., Securities Acts, § 42.
[1-3] Blue Sky Laws, 87 A.L.R. 42.
[1-3, 10] 13 Am. Jur, Corporations, § 255.
[4] 12 Am. Jur., Contracts, §§ 9, 296.
[5] 12 Am. Jur., Contracts, § 252.
[6, 8, 9] 12 Am. Jur., Contracts, § 328.
[7] 12 Am. Jur., Contracts, § 334.
[10] 12 Am. Jur., Contracts, § 438.

2. SAME—BLUE-SKY LAW—RESCISSION—IN PARI DELICTO.

Purchasers of unvalidated stock who were neither officers, direc-
tors, nor participants in the management or reorganization of
defendant corporation and who had paid for their stock before
having knowledge that the State corporation and securities
commission denied validation were not *in pari delicto* with
sellers of the stock; hence, were entitled to rescind purchase
(2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub.
Acts 1935).

3. SAME—CORPORATION—SELLER—COMMON DEFENSE.

In the absence of even an allusion to the third-party-beneficiary
contract statute, defendant corporation and individual de-
fendant who with another, had represented themselves as the
sole stockholders of the corporation in an attempt to exchange
unvalidated stock in a Delaware corporation for plaintiffs'
unvalidated treasury stock in a domestic corporation, were on
a parity as to their defense in statutory assumpsit action by
plaintiffs to recover money paid for stock sold in violation of
blue-sky law (2 Comp. Laws 1929, § 9788, as amended by Act
No. 37, Pub. Acts 1935).

4. CONTRACTS—CONDITIONS PRECEDENT—EXECUTORY CONTRACTS.

Contracts for the exchange of corporate stock, containing con-
ditions precedent which have not been performed are treated
as executory contracts.

5. SAME—CONSTRUCTION—AMBIGUITY.

Any doubt or ambiguity concerning the nature of contracts for
the exchange of corporate stock must be resolved against the
parties who caused the contracts to be drafted.

6. LICENSES—EXECUTORY CONTRACTS FOR EXCHANGE OF UNVALIDAT-
ED STOCK.

Executory contracts for the exchange of unvalidated stock in
Delaware corporation may be treated by plaintiffs as void
in their statutory actions of assumpsit to recover money paid
for unvalidated stock in a domestic corporation, where the ex-
change contracts were not fulfilled by defendants, since li-
ability of defendants under the original stock purchase was
not released (2 Comp. Laws 1929, § 9788, as amended by Act
No. 37, Pub. Acts 1935).

7. SAME—TENDER OF UNVALIDATED STOCK.

The tender of unvalidated stock of a Delaware corporation
pursuant to a contract under which such stock was to be ex-
changed for unvalidated stock of domestic corporation de-

fendants had theretofore sold plaintiffs was not in fact a legal tender at all nor a fulfillment of exchange contract impliedly warranting that the Delaware corporation stock would be validated in this State (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

**8. Same—Corporation—Contract to Exchange Unvalidated Stock.**

Defendant corporation in plaintiffs' statutory actions of assumpsit to recover money paid for unvalidated stock therein is not entitled to rely upon executory contracts for exchange of such stock for unvalidated stock of a Delaware corporation, where there was nonperformance of conditions precedent undertaken on behalf of the corporation by the individual defendant and another (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

**9. Same—Seller—Exchange of Unvalidated Stock—Estoppel.**

Where individual defendant in statutory actions of assumpsit by plaintiff purchasers of unvalidated stock of domestic corporation failed to fulfill his obligations under contracts whereby he was to exchange such stock for stock of a Delaware corporation, he was estopped to assert the validity of such contracts as an election to ratify the original purchase or otherwise (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

**10. Same—Blue-Sky Law—Rescission.**

Purchasers of corporate stock that was never validated for sale in this State were authorized to rescind the transaction for the purchase of that stock, sue and recover therefor (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

**11. Appeal and Error—Remand on Reversal—Interest.**

Where verdicts were for plaintiffs in statutory actions of assumpsit to recover moneys paid for unvalidated stock in a' domestic corporation but judgments were entered for defendants, upon remand for entry of judgments upon the verdicts, interest is awarded (2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935).

Appeal from Kent; Souter (Dale), J. Submitted January 14, 1948. (Docket Nos. 70, 71, Calendar Nos. 43,704, 43,705.) Decided June 29, 1948.

Separate actions of assumpsit by Ray M. Veenstra and Martin Fox against Associated Broadcasting Corporation, a Michigan corporation, and Leonard A. Versluis for money paid on sale voidable under blue-sky law. Cases tried and appealed together. Verdicts for plaintiffs. Judgments for defendants *non obstante veredicto*. Plaintiffs appeal. Reversed and remanded for entry of judgments on verdicts.

*Warner, Norcross & Judd* and *Leonard D. Verdier, Jr.,* for plaintiffs.

*Earl Waring Dunn* (*Paul E. Cholette,* of counsel), for defendants.

REID, J. These two cases were separately begun to recover moneys paid for stock sold in violation of the Michigan blue-sky law. The pleadings are separate but the two cases were consolidated for purposes of trial and are submitted together on appeal. In the Veenstra case, the jury rendered a verdict for plaintiff in the sum of $4,236, and in the Fox case, a verdict in the sum of $6,354. Defendants moved for a directed verdict at the conclusion of plaintiffs' case and again at the conclusion of all testimony. The court reserved decision under the Empson act.* Later, on motion of defendants, the court rendered judgment for defendants notwithstanding the verdict. Plaintiffs appeal.

The verdicts of the jury seem to have determined in favor of plaintiffs all facts which were essential to plaintiffs' case.

Defendant Associated Broadcasting Corporation is a Michigan corporation. The incorporators were

---

* 3 Comp. Laws 1929, § 14531 *et seq.*, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. and Stat. Ann. 1947 Cum. Supp. § 27.1461 *et seq.*).—REPORTER.

Roy C. Kelley and defendant Leonard A. Versluis. The principal objective of the corporation was the development and operation of a national radio network. A directors' meeting August 6, 1945, authorized the sale of 50 remaining shares of treasury stock at $2,000 per share. Defendant Versluis made known to plaintiff Fox that some of the stock was for sale. Plaintiff Fox purchased through Versluis three shares for $6,000 and plaintiff Veenstra, to whom defendant Versluis made recommendation of the purchase, purchased two shares for $4,000. The purchases were made on or about September 12, 1945. Defendant Versluis was the agent of the defendant corporation in making the sales. No stock certificates were ever delivered to plaintiffs. For the amounts of the purchase price with interest, plaintiffs brought suit.

After the plaintiffs had made their purchases, defendants made application to the Michigan corporation and securities commission for authority to sell the stock. The commission refused to accept the stock for filing and with the consent of the commission the corporation withdrew the application. The stock was never authorized for sale by the Michigan corporation and securities commission, of which fact neither plaintiff was advised until late in 1945. Plaintiff Fox was advised of the nonvalidation of the stock on November 21, 1945.

In November, 1945, the corporation was losing money and was in dire need of additional capital. Versluis, the president and treasurer, went to New York and made an arrangement for a loan of $150,000, in return for an option to the Atlas Corporation for a period of 30 days to purchase for $350,000 a two-thirds interest in a new corporation to be formed. The $150,000 loan was to be applied on the purchase. The option required, among other things, the procuring of releases from the stockholders of

the Michigan corporation of their claims against the corporation and provided that a successor new corporation should be formed under the laws of Delaware.

On November 21, 1945, a meeting was held in Versluis' office at which Versluis, Kelley, Fox, Van Houtum, Dunn, Wagemaker, Kozak, Peters, Dr. Snyder, and possibly others were present. Most of those present were stockholders. It was not an official directors' or stockholders' meeting and there were no minutes of that meeting as a meeting of the stockholders or directors. Plaintiff Fox is not shown to have taken any part except as a listener; plaintiff Veenstra was not even present. Mr. Versluis stated at the meeting that the Atlas Corporation required extinguishment of all liabilities of the Michigan corporation on account of stock subscriptions. To obtain compliance with that requirement, the management of the corporation, Versluis and Kelley, and their attorney Dunn, had called the before-mentioned stockholders together and at the meeting, urged upon them a cancellation of causes of action for moneys paid by them for purchase of unlisted stock. From all the testimony, the jury had good grounds for believing that then, theretofore and thereafter, Versluis and Kelley, and their attorney Dunn, were not acting as agents for plaintiffs, although defendants claim they were agents for plaintiffs.

We are not in accord with defendants' claim that plaintiffs were *in pari delicto* with defendants, under the case of *Schrier* v. *B & B Oil Co.*, 311 Mich. 118. In that case Schrier did not complete his purchase of stock until after he had been elected director and vice president of the corporation; he attended every meeting of directors and stockholders after his purchase of stock and before his rescission approxi-

mately 14 months later and had much to do with determining the corporation's policies; he participated in the authorization of increases of capital stock; it was as much his duty as that of any other officer to see that the increased issue was approved by the State commission.

On the contrary, in the case at bar plaintiffs were not officers or directors of defendant company and took no part in management of the company or determining the policy as to reorganization. The management leading up to reorganization was handled entirely by Versluis and Kelley and their attorney, Dunn.

As hereinafter set forth, plaintiffs two days after the meeting of November 21, 1945, signed agreements designated as exhibits Nos. 32 and 33. They did not sign any other agreement. Versluis and Kelley signed said exhibits Nos. 32 and 33 as "sole stockholders" and as directors of Associated Broadcasting Company and were the opposite parties to plaintiffs.

Two days after the meeting above referred to and on November 23, 1945 (Thanksgiving Day), Kelley and defendant Versluis prepared a form of agreement of the general form of exhibits introduced in evidence, being exhibits Nos. 32 and 33. On that evening Mr. Kelley called at the residence of Mr. Fox and explained the extreme urgency of the situation of the Michigan corporation. Between 10 and 11 o'clock the same night Mr. Veenstra also came to Mr. Fox's residence in pursuance to a call from Mr. Fox. Mr. Kelley stated to plaintiffs that exhibits Nos. 32 and 33 must be signed that night in order that the Atlas Corporation should make its investment of $150,000 and that it was essential that the agreements should be placed in the air mail on the airplane leaving Grand Rapids at midnight. Mr.

Kelley told plaintiffs that with the additional capital the business would have a better opportunity of success. Mr. Veenstra and Mr. Fox asked for further time but Mr. Kelley said it would be impossible, that he had to get other agreements that same night and get them out on the airplane, so that neither plaintiff Fox nor plaintiff Veenstra had an opportunity to discuss with their attorney, Mr. Norcross, the matter of signing the agreement. Exhibit No. 33 is as follows:

"Agreement

"This Agreement made this 23d day of November, A. D. 1945, by and between Leonard A. Versluis and Roy C. Kelley, of the city of Grand Rapids, Michigan, herein called first parties, and Ray M. Veenstra of the city of Grand Rapids, Michigan, herein called second party, Witnesseth,

"Whereas first parties are the sole stockholders of the Associated Broadcasting Corporation, organized and doing business under the laws of the State of Michigan, and are also directors of said corporation, said corporation being hereinafter referred to as 'Associated',

"Whereas Associated did heretofore file with the Michigan corporation & securities commission an application to sell certain of its treasury stock under the provisions of [2 Comp. Laws 1929, § 9781, subd. 3, as amended by Act No. 165, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 9781)], Stat. Ann. 1945 Cum. Supp. § 19.753, subd. 3, and did accept subscriptions to said stock from certain persons, among whom was second party,

"Whereas, after second party had paid Associated the amount of his subscription but before any stock was issued by said corporation, said securities commission did refuse to accept said securities for filing under said section of said statute,

"Whereas it is now proposed to reorganize said corporation to enable it to finance its operations

more adequately, by the organization of a new corporation and the sale to it of the entire business and assets of said corporation, subject to its outstanding debts and liabilities, except for the liability of Associated to second party and said other subscribers, which liability it is necessary that first parties adjust directly with second party,

"Therefore, It is agreed as follows:

"1. After first parties shall have transferred a certain share, hereinafter designated, to their attorneys, of the stock received in the new corporation upon reorganization, the remaining stock shall be divided as follows:

"a. Each of first parties shall retain a one-third share of said stock.

"b. The remaining one-third of said stock shall be divided into 31 equal parts to correspond with the 31 shares of stock of Associated subscribed and paid for, and one of said 31 parts shall be transferred to second party for each share of stock subscribed for and paid for by him.

"c. First parties shall transfer said stock as soon as practicable after they shall have had such stock transferred to them.

"2. In consideration of the premises and the above promises of first parties, second party does hereby remise, release, and forever discharge, and by these presents does for himself, his heirs, executors, administrators and assigns, remise, release, and forever discharge the Associated Broadcasting Corporation, and its successors and assigns, of and from all and all manner of action and actions, cause * * * [or] causes of action, suits, debts, dues, sums of money, accounts, promises and demands whatsoever, in law or equity, which against said corporation he had had, now has, or which his heirs, executors, administrators or assigns, hereafter can, shall or may have, for or by reason of any matter or thing whatsoever.

"3. Second party will accept said stock when so transferred to him in full and complete satisfaction also of any and all obligations, claims or rights of action, at law or equity, present or contingent, of any nature whatsoever, which he now has, or may in the future have against first parties, by reason of said stock subscription.

"4. It is understood by the parties that the reorganization now proposed and contemplated is one by which the Atlas Corporation of New York City, or its related interests, shall be given an option to purchase the business, rights and assets of Associated, subject to its assuming the debts and liabilities of said corporation, upon the condition that it loan to Associated forthwith the sum of $150,000, upon the payment of which it shall have 30 days to examine further into the affairs of said corporation, provided that it may upon the payment of Associated as a loan of an additional $30,000 have an additional 30 days in which to continue its examination, and then, if it desires to complete said purchase, it will organize a new corporation to take over said business, and will give to first parties one-third of the authorized capital stock in said new corporation in exchange for the capital stock in Associated which first parties have heretofore subscribed and paid for. It is also understood that first parties are obligated to transfer 40 per cent. of the stock so received by them to their New York attorneys in payment for services connected with said sale and reorganization, and the balance of 60 per cent. of said stock is subject to be divided as above provided.

"5. If for any reason said proposed sale to and reorganization by Atlas Corporation shall not be consummated, but another sale and reorganization agreeable to first parties shall be initiated and consummated, the parties hereto will make the same pro rata division and distribution of the stock received, and it will be accepted, on the same terms and conditions and with the same effect as hereinbefore provided for.

"In witness whereof the parties have hereunto set their hands and seals in the day and year first above written.

|                    |          |
|--------------------|----------|
| L. A. VERSLUIS     | (L.S.)   |
| R. C. KELLEY       | (L.S.)   |
| RAY M. VEENSTRA    | (L.S.)"  |

Exhibit No. 32 is identical with exhibit No. 33 excepting for the name Martin M. Fox instead of Ray M. Veenstra in the premises and also as a signature. The proposed deal with the Atlas Corporation fell through; the Atlas Corporation refused to advance further money. The Delaware corporation which was formed never received any authorization of the Michigan corporation and securities commission to sell its stock in Michigan. Kelley and defendant Versluis were totally unable to fulfill their promises and undertakings under exhibits Nos. 32 and 33. Shares of stock in the Delaware corporation were issued and mailed to Mr. Dunn at Grand Rapids; Mr. Dunn left them at Fox's office for plaintiffs but plaintiffs refused to accept them and without having been accepted, they are tendered back. Neither Mr. Fox nor Mr. Veenstra ever exercised any rights or authority under or by virtue of the shares of stock in the Delaware corporation.

Plaintiffs claim (1) that the agreements of November 23, 1945, were voidable at the option of the plaintiffs under the Michigan blue-sky law (Act No. 220, § 20, Pub. Acts 1923 [2 Comp. Laws 1929, § 9788], as amended by Act No. 37, Pub. Acts 1935 [Comp. Laws Supp. 1940, § 9788, Stat. Ann. § 19.-760]); (2) that the unvalidated stock of the Delaware corporation tendered to but not accepted by plaintiffs was offered to plaintiffs in violation of the Michigan blue-sky law (Michigan being the jurisdiction in which the agreement for the delivery of such stock to plaintiffs was made and also the jurisdiction in which the stock was undertaken to be delivered to

plaintiffs) ; (3) that Kelley and defendant Versluis never performed the conditions in the agreements of November 23, 1945 (exhibits Nos. 32 and 33) in that Kelley and defendant Versluis did not consummate a sale to the Atlas Corporation, or any other corporation, or refinancing through the Delaware corporation, or any other corporation. Plaintiffs further claim that they had a right to avoid the two agreements in question, exhibits Nos. 32 and 33, and that they are entitled to recovery under the Michigan blue-sky law the same as though exhibits Nos. 32 and 33 had never been executed. Plaintiffs further in their brief speak of exhibits Nos. 32 and 33 as though they were executory in nature.

Defendants claim (1) that plaintiffs' pleadings did not raise an issue as to whether the agreements in question, exhibits Nos. 32 and 33, were illegal and voidable under the Michigan blue-sky law, and (2) that exhibits Nos. 32 and 33 constitute an election on the part of plaintiffs and a novation that bars their recovery on their original subscription to the Michigan corporation's stock. Defendants in their brief speak of exhibits Nos. 32 and 33 as though they were of the nature of executed contracts.

Plaintiffs in their replies to defendants' answers in both cases denied defendants' claim that the agreements, exhibits Nos. 32 and 33, terminated the liabilities of defendants arising from the stock subscription of the plaintiffs. The plaintiffs deny the allegations in the defendants' answers that the plaintiffs became owners of stock in the Delaware corporation. In each case the reply of plaintiffs to defendants' answer contains these words, "in support of said denial, plaintiff says that even if said agreement were valid, which he does not admit, it was never performed because the refinancing contemplated therein was never accomplished."

As we understand from the pleadings, plaintiffs' claim is that the nonfulfillment by Kelley and defendant Versluis of their promises and the complete and entire inability of Kelley and defendant Versluis to perform their promises, which promises constitute the sole consideration moving to plaintiffs in exhibits Nos. 32 and 33, has operated to render the agreements void and has left the plaintiffs in the same position they would have been in had exhibits Nos. 32 and 33 never been made.

In exhibits Nos. 32 and 33 the first parties, Kelley and Versluis, do not recite that they are signing on behalf of the corporation, but in the "whereas" clauses they do recite that they are the sole stockholders of the defendant corporation and also are directors of the corporation. The answers filed by the defendants in setting out affirmative defenses do not explicitly say that there is a different defense for one defendant as compared to the other.

The third-party-beneficiary contracts statute (Act No. 296, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 14063–1 *et seq.*, Stat. Ann. 1947 Cum. Supp. § 26.-1231 *et seq.*]) is nowhere alluded to in the pleadings or briefs of the defendants. The two defendants seem to treat their defense as one and a common defense. Under all these circumstances, we treat the defendant corporation and defendant Versluis as though standing on a parity as to their defense.

We consider the two contracts, exhibits Nos. 32 and 33, taken in their entirety, as executory in nature, for the reason that they contained conditions precedent. Those conditions were not performed. Defendants caused the drafting of the two contracts and any doubt or ambiguity concerning the nature of the contracts must be resolved against the defendants. Accordingly we consider that the plaintiffs are at liberty to treat the contracts as though

containing no election on the part of plaintiffs to ratify the original stock transaction, and that the two contracts, exhibits Nos. 32 and 33, are entirely void. Efforts at compliance by Kelley and defendant Versluis did not result in fulfillment of their obligation. Defendants are not by reason of the two contracts, exhibits Nos. 32 and 33, released from their liability under the blue-sky law, on account of the original stock purchase.

The tender by Kelley and defendant Versluis of the new stock of the Delaware corporation, sale of which stock was not authorized by the Michigan corporation and securities commission, was in fact no legal tender at all, neither can it be considered to be in any sense a fulfillment of the undertaking of Kelley and defendant Versluis under exhibits Nos. 32 and 33. Plaintiffs had a right to rely upon the implied warranty by Kelley and defendant Versluis that the new stock of the Delaware corporation would be validated by the Michigan commission.

Defendant corporation is not entitled to rely upon exhibits Nos. 32 and 33 by reason of nonperformance of conditions precedent undertaken on behalf of the corporation by Versluis and Kelley. By his nonfulfillment of his obligation under exhibits Nos. 32 and 33 the defendant Versluis is estopped to assert the validity and effectiveness of the two contracts as an election or otherwise.

The rights of no third party intervene.

The stock of the Michigan corporation never having been authorized to be sold by the State corporation and securities commission, plaintiffs were authorized to rescind the transaction for the purchase of the stock of the Michigan corporation and have a right to sue and to recover therefor.

The judgments appealed from are reversed. The cases are remanded to the trial court with direction

to enter judgments upon the verdicts, with interest. Costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.