FARNSWORTH *v.* FRASER.

1. BILLS AND NOTES—CONSIDERATION—MORAL OBLIGATION.

Where decedent induced claimant to remove from his farm and reside with her by a promise that she would see that he did not lose by it, and the change in residence proved unsatisfactory to her, whereupon she agreed with him that she was under a legal obligation to compensate him for his loss incurred in moving, and gave him her note therefor, such satisfaction of his claim was an adequate consideration for the note.

2. SAME—VALUE OF CONSIDERATION.

It was not necessary that a claimant should show that the value of the consideration was equal to the face of the note, it being sufficient to show the parties agreed it was of that value.

3. SAME—PARTIAL FAILURE OF CONSIDERATION.

Where there was no evidence that the consideration of a note

was worth less than its face value, it was not error to refuse
to submit to the jury the question of a partial failure of con-
sideration.

4. SAME—WANT OF CONSIDERATION—BURDEN OF PROOF.

The duty of introducing proof to show want of consideration
for the note of a decedent is on the administrator, but he does
not have the burden of proving by a preponderance of testi-
mony that there was no consideration.

5. SAME—INVITED ERROR.

Where the court, at the request of defendant, an administra-
tor, charged the jury that the fact that the deceased signed
the note would not authorize a recovery provided that the
defendant showed the note was given without consideration,
the defendant cannot complain of a further charge that the
burden of showing there was no consideration for the note
rested on the defendant.

6. EXECUTORS AND ADMINISTRATORS — ADMISSIONS — RULES OF
PRACTICE.

While an administrator may not admit a liability against the
estate, he must, in the trial of a case, be bound by the rules of
law which regulate the practice in court.

7. TRIAL—ARGUMENTS—TWO COUNSEL—HARMLESS ERROR.

It was not prejudicial error to refuse to permit one of defend-
ant's counsel to argue a particular question to the jury,
where the other counsel was subsequently permitted to argue
the question, and it did not appear that the question was not
fully argued, or that the defendant asked to have the particu-
lar counsel argue it.

8. NEW TRIAL—MISCONDUCT OF JURY.

A new trial will not be granted because the jury took less than
five minutes to reach a verdict.

Error to Ingham; Wiest, J.   Submitted June 16, 1904.
(Docket No. 30.)   Decided July 16, 1904.

Asa Farnsworth presented a claim against the estate of
Lucy M. F. Seely, deceased, for the amount of a promis-
sory note, which was allowed by the commissioners. The
administrator, William A. Fraser, appealed to the circuit
court, where there was judgment for the claimant, and
the administrator brings error.   Affirmed.

*William A. Fraser* (*Black & Reasoner*, of counsel), in pro. per.

*White & Cramton,* for appellee.

CARPENTER, J. Claimant presented against the estate of Lucy M. F. Seely a negotiable promissory note purport-ing to be signed by decedent, dated September 23, 1893, whereby she promised to pay Asa Farnsworth or bearer the sum of $500, with interest, on or before three years from date. It was contended that deceased did not sign this note, and that the note was given without considera-tion. Both of these issues were submitted to the jury, who rendered a verdict for the claimant. We are asked to reverse the judgment for several reasons.

1. It is insisted that the testimony shows that the note was given without consideration, and that, therefore, a verdict should have been directed for the defendant. The testimony respecting the consideration of the note is this: In January, 1893, claimant was living on his farm in the county of Lapeer. Decedent wrote him:

"Rent your farm, and come and live with me for a year and try it. * * * I will give you all you can make and pay you what you think is right, two dollars a week, if that will do. * * * If you think favorably of this, you can say you do and come out here and make arrange-ments."

Subsequently claimant visited decedent, and made some arrangements; precisely what, we do not know, as the claimant was not sworn as a witness, his testimony re-specting such arrangement being inadmissible (section 10212, 3 Comp. Laws), and no writing evidencing said arrangement is produced. He then returned to his home in Lapeer, rented his farm for three years, sold his effects at auction, and on the 15th of March, 1893, moved to de-cedent's farm near Mason, Ingham county. The deced-ent, Mrs. Seely, resided in claimant's family, and matters did not move smoothly. About July 1, 1893, according

to the testimony of claimant's wife, claimant said to decedent:

" ' Aunt Lucy, things are not going here to please you,' and she said 'she didn't know as she said anything.' He says, ' You act as though you were dissatisfied, and I am very sorry, for I made a great sacrifice to come out here to try and please you, and it is anything but pleasant for us, and it seems to be very unpleasant for you;' and he said ' it is quite a damage to me.' She spoke up and said, ' What is the damage?' My husband [claimant] says, ' I would not have sold my stuff, and rented my farm, and come here, leaving everything.' He says, ' $500 would not make me good.' And she says, 'I will pay it.' * * * That was all I heard. * * * We moved back to our farm March 16, 1894. * * * I first saw this note in the spring of 1894. * * * I understood from my husband, when he told me of the note, that it was for what we had lost in moving there by letting our farm."

It may be inferred from this testimony that the note was given in satisfaction of any claim that claimant might have against deceased for compensation for his loss in removing from his farm in Lapeer county to her farm in Ingham county.

It is contended that decedent, by the letter heretofore quoted, at most only morally obligated herself to compensate claimant for this loss, and that this moral obligation furnished no consideration for the promise evidenced by her note. It may be that, if it were left to a court to construe the language of said letter, the conclusion might be that decedent had not legally obligated herself to make such compensation. But under the circumstances of this case I do not think that the question depends upon the court's construction of that letter. By executing the note in suit decedent admitted that her promise was supported by a legal consideration. See *Rood* v. *Jones*, 1 Doug. (Mich.) 193. I think, too, it may be inferred from the testimony above quoted that both decedent and claimant conceived that the former was under, not merely a moral obligation, but a legal obligation, to compensate the latter

for his loss. They may have agreed that the language, "I will not let you lose if I can help it," contained in the letter, imposed upon decedent a legal obligation to make such compensation. If they did, thereby agreeing, as they had a right to agree, upon the construction of this language, a court—certainly in a case as doubtful as this—will accept that construction. See *District of Columbia* v. *Gallaher*, 124 U. S. 505 (8 Sup. Ct. 585); *Childers* v. *First National Bank of Jeffersonville*, 147 Ind. 430 (46 N. E. 825); and numerous other authorities cited in the 9th Cyclopedia of Law and Procedure, p. 589. According to that construction, it is clear that the satisfaction of claimant's claim was an adequate consideration for the note. See *Kennedy* v. *Shaw*, 43 Mich. 359 (5 N. W. 396).

It may also be said that the precise arrangement under which claimant moved from his farm in Lapeer county to decedent's farm in Ingham county is not shown by the testimony, but it was known both to claimant and to decedent. It may be that that arrangement legally obligated decedent to compensate claimant for the loss under consideration. As it may be inferred that decedent, by the execution of the note, admitted that she was under a legal obligation to compensate claimant for that loss, we cannot say that the jury were not warranted in inferring that the terms of this arrangement imposed that obligation upon her.

Neither is it true, as defendant contends, that the claimant was bound to show that the value of his claim was $500. It was sufficient for him to prove that he and decedent agreed that that was its value.

Nor did the trial court err, as defendant contends, in refusing to submit to the jury the question of partial failure of consideration, for there was no evidence that the consideration—the claim of claimant for compensation—was worth less than $500.

2. It is contended that the court erred in charging the jury that "the burden of showing that * * * there was no consideration for the giving of the paper" rested

upon the defendant. We shall not stop to inquire whether by this the court meant that the *duty of introducing testimony* to show want of consideration, after the note had been properly put in evidence, rested upon defendant, in which event the instruction was correct (see *Rood* v. *Jones,* supra; *Young* v. *Shepard's Estate,* 124 Mich. 522 [83 N. W. 403]), or whether he meant that the duty rested upon defendant to prove *by a preponderance of testimony* that there was no consideration, in which event the instruction was wrong (see *Manistee National Bank* v. *Seymour,* 64 Mich. 73, 74 [31 N. W. 140]). (The phrase "burden of proof" is often used in these different senses. See Thayer's Preliminary Treatise on Evidence, p. 355.) Assuming that the trial court used the phrase in the latter sense—and only in that event was the charge erroneous—we are bound to say that defendant cannot ask that the judgment be reversed on that ground. He requested the court to charge and the court did charge "that, if the jury shall find from the evidence that the deceased did actually sign the note, this in itself will not authorize him to recover, provided that the defendant shows from the evidence that the note was given without consideration." This request certainly indicates just as clearly as did the charge of the court that the burden to prove want of consideration by a preponderance of testimony rested upon defendant. This was the only request touching the subject preferred by defendant. If, therefore, the charge under consideration was erroneous, the error was due to the fact that the trial court adopted the theory urged by defendant. Appellant cannot ask a reversal for such an error, if error it was. See *Adkin* v. *Pillen,* 136 Mich. 682 (100 N. W. 176).

Defendant urges that the foregoing principle has no application to this case, because this is a suit against an estate, and that the defendant administrator "could not have agreed that the burden of proving consideration for the notes could be shifted from the claimant to the estate." The question under consideration is not whether the ad-

ministrator can agree to assume the burden of proof which rested upon the opposite party; the question is whether in trying his suit he must regard the rules of law which regulate the practice in court. We think it settled that he must. See *Barbier* v. *Young,* 115 Mich. 100 (72 N. W. 1096).

3. Defendant was represented in the court below by two counsel, each of whom argued the case before the jury. The court refused to permit the counsel who made the first argument to discuss the question of want of consideration for the note, because he was then of the opinion that there was no evidence tending to prove want of consideration. Afterward the court reconsidered this ruling, and permitted this issue to be argued to the jury by the other counsel for the defendant, as well as by counsel for claimant. It is urged that this was error. The only way in which this ruling injuriously affected defendant was to prevent a particular counsel from arguing this question when he was making his opening argument. We do not think this constituted reversible error. We cannot infer from the record before us that the question was not fully argued. We cannot say that defendant was prejudiced because he was denied the right of having it argued by a particular counsel, because he did not—as he should have done had he desired that privilege—ask for it when the trial court decided to submit the question to the jury.

4. It is contended that the trial court should have granted a new trial because it took the jury less than five minutes to reach a verdict. In disposing of this question the trial judge used the following language, which we approve:

"If the jurors were unanimous in opinion, and ascertained that fact, as they must have done to return a verdict, then there was no necessity for them to remain any longer in their room. Discussion among them was only necessary in case of a difference of opinion, and they are rather to be commended for their promptness than condemned."

No other question demands consideration.

The judgment of the circuit court is affirmed, with costs.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. MOORE, C. J., did not sit.