LICHNOVSKY v ZIEBART INTERNATIONAL CORPORATION

Docket No. 64279. Argued December 9, 1980 (Calendar No. 3).—Decided September 28, 1982.

Anthony S. Lichnovsky brought an action against Ziebart International Corporation and Ziebart Rustproofing Company, seeking an injunction to prevent the defendants from terminating a license agreement under which he operated Ziebart rustproofing stations in Genesee County. The Genesee Circuit Court, Ollie B. Bivins, Jr., J., enjoined the defendants from terminating the agreement. The Court of Appeals, Danhof, C.J., and Carroll, J. (V. J. Brennan, J., concurring), held that because the agreement was for an unspecified or indefinite term it was terminable at will by Ziebart and remanded the case to the circuit court to determine the amount of time necessary for the plaintiff to recoup the expenditures incurred in preparing to perform his obligations under it (Docket No. 78-2796). The plaintiff appeals.

In a unanimous opinion by Justice Levin, the Supreme Court *held:*

The license agreement is not terminable at will, but only for cause. The rule of construction that an agency, employment, or license agreement for an indefinite term is terminable at the will of either party applies when there is *no* provision concerning the term or duration of the agreement or the manner in which it may be terminated. In this case the agreement, although of uncertain duration, specifies the manner of termination.

1. The agreement, although of uncertain duration, contains a provision for termination for cause which militates against a construction that it is terminable at will. The elaborate procedure for termination for cause would not have been included in the agreement had it been intended that the agreement could be terminated without cause merely by delivering notice. Such

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 3 Am Jur 2d, Agency § 34 *et seq.*

17 Am Jur 2d, Contracts §§ 80, 329, 482, 486.

Termination by principal of distributorship contract containing no express provision for termination. 19 ALR3d 196.

a construction would also be inconsistent with other provisions of the agreement pertaining to assignment or transfer of the plaintiff's interest in the license by allowing Ziebart to prevent or impede the transfer unreasonably. The practical construction by the parties was that the defendants did not have a unilateral right to terminate the agreement, and the plaintiff fairly understood that the agreement could be terminated only for cause and only after notice and an opportunity to cure the default.

2. An agreement which the parties have agreed is terminable only for cause and which is to endure until so terminated is legally enforceable until terminated on that ground. The intent of the parties is determinative. The agreement is indefinite not because the parties have failed to agree upon the term, duration, or manner of termination, but because under the conditions for termination the precise date of termination could not be calculated at the time the agreement was entered into. Where an agreement is indefinite in that sense, a court may not supply a durational term for the agreement, because the parties have already done so.

Reversed and remanded.

93 Mich App 60; 285 NW2d 795 (1979) reversed.

1. CONTRACTS — INDEFINITE TERM — TERMINATION.

An agency, employment, or license agreement which fails to provide for its term, duration, or manner of termination is said to be for an indefinite term and is terminable at the will of either party; however, where there is a provision concerning the manner of termination, the term is not indefinite in that sense and the agreement is enforceable until terminated in the specified manner even though there is no fixed time for termination.

2. CONTRACTS — TERM — TERMINATION AT WILL.

A franchise agreement need not have an outside time limit to be valid; it is not the law that an agreement must have a definite term or duration and that therefore an agreement which does not have a definite term or duration is terminable at the will of either party.

3. CONTRACTS — INDEFINITE TERM.

The word "indefinite" may be used of the term of a contract in different senses: in one sense, the duration is indefinite if it in no way specifies the term, duration, or manner of termination, but in another sense the duration is indefinite if the precise date of its termination cannot be calculated at the time the

agreement is entered, even though the conditions under which it is to terminate are clearly spelled out; when an agreement is indefinite only in this second sense, a court may not properly supply a durational term.

4. CONTRACTS — INDEFINITE TERM — TERMINATION AT WILL.

An agreement which fails to provide for its term, duration, or manner of termination is terminable at the will of either party because they have not agreed otherwise and it is generally thought to be reasonable in such a case to infer that the parties intended that the agreement be terminable at will.

5. CONTRACTS — INDEFINITE TERM — TERMINATION.

An agreement which is terminable only for cause and which is to endure until so terminated is legally enforceable until so terminated, and, although the agreement is indefinite in the sense that a precise date of termination could not be calculated at the time of agreement, a court may not supply a durational term for the agreement, because the parties have already done so.

*William J. Priehs* for plaintiff.

*Goodenough, Smith & May* (by *Richard H. May* and *Shamoon Zakaria)* for defendants.

LEVIN, J. Ziebart International Corporation notified Anthony S. Lichnovsky of its intention to terminate for cause Lichnovsky's franchise under a license agreement with Ziebart.

Lichnovsky commenced this action and sought an injunction against the threatened termination. The trial court found that Lichnovsky had not breached the license agreement and restrained Ziebart from terminating the agreement on the basis of the evidence adduced at the hearing.

The Court of Appeals agreed that Ziebart had failed to prove a breach of the performance standards of the agreement. It said, however, that the agreement was for an unspecified or indefinite term or duration and that, in consequence, Ziebart could terminate it at will without assignment or

proof of cause, subject to Lichnovsky's right (under the so-called Missouri rule) to enforce the agreement for such time as would provide a reasonable opportunity to recoup the expenditures incurred by him in preparing to perform his obligations under the agreement. The cause was remanded to the trial court to determine what time would be required to protect Lichnovsky's right of recoupment.[1]

We reverse because the license agreement is terminable only for cause. We remand to the Court of Appeals to consider other issues not dealt with in the appeal to that Court.

# I

The predecessor of Ziebart, Auto Body Rustproofing Company, and Lichnovsky entered into a license agreement dated June 13, 1963. The agreement granted Lichnovsky the exclusive right to use the Ziebart process for rustproofing automobiles in Genesee County, including the City of Flint.[2]

Ziebart notified Lichnovsky on April 6, 1976, that he had failed to perform in accordance with Ziebart's quality standards and of its intention to terminate the agreement by June 30. Lichnovsky filed a complaint seeking injunctive relief on April 21, 1976. Ziebart answered, stating that Lichnovsky had failed to perform "his rustproofing activities" in accordance with the standards required by Ziebart. Ziebart filed a cross-complaint seeking the

[1] Some 13 years had already intervened between the signing of the agreement and the notice of termination.

[2] The agreement provided that Lichnovsky "may from time to time move his business location within [the] territory without first obtaining permission from [Ziebart]".

termination of the agreement and injunctive relief against Lichnovsky's use of the name "Ziebart". The cross-complaint stated that Lichnovsky was notified of Ziebart's intention to terminate "because" of his breach of contract and because his failure to conform to Ziebart standards confers on Ziebart the right and duty under trademark laws to terminate the franchise.

The trial court found that in November, 1973, Ziebart had submitted a new license agreement which Lichnovsky rejected, and that in January, 1975, Ziebart sent a revised company policy manual to Lichnovsky stating standards of performance "beyond those standards stated in its new license agreement", and that the letter of April, 1976, sought to require Lichnovsky to maintain still higher standards.

The trial court concluded that "[t]he witnesses who testified for Ziebart lacked * * * experience in body work or rustproofing".[3] The court, adverting to differences between the license agreement and the policy manual, found that they were "totally inconsistent". The court said that Ziebart's

---

[3] One of Ziebart's witnesses testified that he received five days' training in the Ziebart system and became a firm representative and district sales manager. He had no previous experience with automobiles, but had performed at least 150 quality evaluations. Another witness testified that he had received one week of technical training and one week of sales training and had operated a Ziebart shop since August, 1975. Another Ziebart witness testified that he was employed as a district sales manager for Ziebart, but the trial court found that he had neither the experience nor training to qualify as a quality control evaluator.

The trial court found that Lichnovsky "has many years experience as a body repairman and body shop owner". Lichnovsky "refused, based upon his experience, to rustproof the center portions of the outer door panels, the rear portions of hoods and the cowl of automobiles". Two persons experienced in the body repair business "corroborated Lichnovsky's testimony that automobiles do not rust in the areas that Ziebart's manual states must be rustproofed".

effort in 1973 to change the license agreement "speaks to the motive of this cause of action". The court concluded that Lichnovsky had not breached the agreement and that Ziebart would be restrained from terminating the agreement, and a judgment to that effect was entered.[4]

The Court of Appeals affirmed the trial court's determination that Lichnovsky had not breached the performance standards of the license agreement[5] but said that that "does not end our examination of this troubled relationship".[6]

The Court of Appeals said that Lichnovsky, in asserting that he was entitled to prevail on the ground that he was not in breach of the license agreement, was necessarily asserting a perpetual right under the agreement. The Court was of the opinion that such an obligation is "so inaptly fitted to the always changing commercial world that courts find them only when the language of an agreement allows no other reasonable construction". It was persuaded that there was "nothing in the terms of this agreement that indicates a perpetual duration was not intended by the parties" but found that the agreement was for an unspeci-

---

[4] The trial court's opinion did not refer to or make findings concerning the claim that Ziebart has a right and duty of cancellation under the trademark laws.

[5] The Court of Appeals stated that the circuit court was "correct in limiting the defendant's right to enforce performance standards to those standards contemplated by the agreement. While the matter was apparently decided below on the grounds that defendant's post-1963 requirements were not shown to be reasonably related to effective rustproofing, we affirm the decision upon our observation that the defendant never attempted to prove what body coverage and shop upkeep standards were ordinarily observed by the defendant and its dealers in 1963. It may be assumed that this proof was in the possession of the defendant. Without it, no breach of the contract in this regard can be shown." *Lichnovsky v Ziebart International,* 93 Mich App 60, 69-70; 285 NW2d 795 (1979).

[6] *Id.,* p 70.

fied or indefinite term or duration and that there was no "forceful indication of intent" favoring construction of a perpetual relationship and that such agreements are generally cancellable "at the will of either party".[7]

After so concluding, the Court of Appeals then adopted the so-called Missouri rule which it said provides that "in agreements for an unspecified duration the principal's otherwise unfettered right to terminate the arrangement at will is limited by the agent's right to enforce the agreement for such a time as will afford him a reasonable opportunity to recoup the expenses he has incurred in preparing to perform his obligations".[8] The Court of Appeals remanded for an evidentiary hearing directed to the recoupment question.[9]

The opinion of the Court of Appeals expresses decisionally views regarding the rules of construction applicable to franchise and other agreements which prompted our decision to grant leave to appeal and with which we disagree.[10] We have

[7] *Id.,* pp 70-71.

[8] It said, "[t]his limitation on the principal's power applies only when the agent has actually and foreseeably expended capital or given up an otherwise profitable business in his preparations, and allows recoupment only of those expenditures directed to this end; it does not include ordinary operating expenses and does not guarantee the franchisee a profit." 93 Mich App 72-73.

[9] While it was apparent that Lichnovsky had made substantial expenditures in readying himself to perform the license agreement, the Court of Appeals was of the opinion that, "it is impossible to determine from this record the amount of the expenditures that the plaintiff has made or whether, despite the long period which has elapsed since the performance started, plaintiff's 'reasonable time' has passed". 93 Mich App 74.

[10] In granting leave to appeal, we directed the parties to include among the issues to be briefed: "(1) did the parties intend that this franchise contract be terminable by the licensor only if the licensee breached the contract?; and (2) if the parties did so intend, may this franchise contract of indefinite term nevertheless be terminated at will by the licensor after the licensee has had a reasonable opportu-

concluded that we should address the constructional issue decided by the Court of Appeals without further scrutiny of the record on the disputed question whether the terminable-at-will argument was timely raised by Ziebart and, if not, whether Lichnovsky waived his right to object on that ground.[11]

## II

The license agreement granting Lichnovsky a Ziebart franchise provided that it would remain in "full force and effect indefinitely, unless terminated at an earlier date" "[s]hould licensee fail to perform any of the terms, conditions or provisions" of the agreement and "remain in default for a period of 30 days after the receipt of a notice"[12] from Ziebart.

Ziebart focuses on the word "indefinitely" and asserts that "since the license agreement is of an 'indefinite' duration, it is terminable at will by either party upon reasonable notice". Lichnovsky, focusing on the provisions permitting Ziebart to

nity to recoup the expenses he incurred in preparing to perform his duties under the contract?" 408 Mich 930 (1980).

[11] Ziebart argued in the Court of Appeals that the agreement was for "an 'indefinite' duration" and was "terminable at will". The trial court had not considered that argument. Lichnovsky contends that this argument was not raised in the trial court. Ziebart counters that it was raised in the trial court and, whether it was or not, Lichnovsky responded on the merits in the Court of Appeals and, thus, waived any right to object at this time.

[12] "10. This license agreement shall be in full force and effect indefinitely, unless terminated at an earlier date in accordance with the provisions of paragraph 11.

"11. Should licensee fail to perform any of the terms, conditions or provisions of this license agreement, and shall remain in default for a period of 30 days after the receipt of notice by licensor by registered letter setting forth the reasons and grounds for default, licensor shall thereafter have the right to terminate this agreement forthwith by registered letter to licensee".

terminate for breach of the agreement after notice of default and Lichnovsky's failure to cure the default, asserts that the agreement is terminable only in the event of default, the giving of such notice, and failure to cure the default.

Ziebart's argument is based on a rule of construction applicable where there is no provision concerning the term or duration of an agency, employment, or license agreement or the manner in which it may be terminated. Agreements containing no such provision are often characterized as being for an "indefinite term". The rule of construction is that such an agreement is terminable at the will of either party.[13]

We reverse because the rule of construction relied on by Ziebart does not apply where the agreement, although of uncertain duration, contains a provision specifying the manner of termination.[14]

A

The inclusion in this agreement of a specific right to terminate for cause, especially a right limited by the requirement that the licensee be given notice of the asserted breach and an opportunity to remedy the default, militates against a construction of the agreement that the licensor can terminate at will. If the agreement were construed as authorizing Ziebart to terminate the

[13] The rule was stated in the context of an employment contract in *O'Connor v Hayes Body Corp,* 258 Mich 280, 282; 242 NW 233 (1932).

[14] The *O'Connor* case, cited by the Court of Appeals, involved a plaintiff who was hired as an efficiency expert for "no definite period". 258 Mich 282. The parties in that case did not specify the *manner of termination* of the contract.

relationship without assigning cause, then the provisions permitting termination "should the licensee fail to perform", requiring notice of default and receipt thereof by the licensee, and permitting the licensee to cure the default within 30 days and authorizing the licensor to terminate "thereafter" *(i.e.,* in the event that default is not cured) are rendered virtually meaningless. An elaborate procedure for termination for cause would not have been included in the agreement if it were intended that the agreement could be terminated *without* cause merely by delivering notice.[15]

The practical construction of the parties was that Ziebart did not have a unilateral right to terminate.[16] When Lichnovsky declined in 1973 to sign a new license agreement, Ziebart took no action to terminate, possibly in recognition that the 1963 agreement was not terminable at the will of Ziebart. The April, 1976, notice of intention to terminate did not assert a right to cancel at will, but rather asserted that Lichnovsky had failed to perform in accordance with the requirements of

---

[15] " 'Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.' " 6 RCL 838, quoted in *McIntosh v Groomes,* 227 Mich 215, 218; 198 NW 954 (1924), *Draper v Nelson,* 254 Mich 380, 383; 236 NW 808 (1931), and *Laevin v St Vincent de Paul Society of Grand Rapids,* 323 Mich 607, 610; 36 NW2d 163 (1949).

[16] "If the contract has been in part performed, the construction placed by the parties themselves on terms in it which are indefinite and uncertain may be shown and should be considered by the court. It will always be assumed that the parties themselves understood what was meant by the language used and are not liable to be mistaken about it, and if, in performing under it, they have treated the uncertain or ambiguous terms as having a particular meaning, the construction thus placed upon it by them will have great weight with a court." *McIntosh v Groomes, supra,* 220, citing *Switzer v Pinconning Manufacturing Co,* 59 Mich 488, 493; 26 NW 762 (1886), and *Farnsworth v Fraser,* 137 Mich 296, 300; 100 NW 400 (1904).

the license agreement. Ziebart's counterclaim did not assert a right of termination at will, but stated that the franchise was being cancelled "because" of Lichnovsky's breach of contract and, alternatively, because, in light of Lichnovsky's non-performance, Ziebart had the right and obligation to terminate under the trademark laws.

To construe this agreement as permitting termination at will would also be inconsistent with other provisions in the agreement. Paragraph 7(f) prohibits Lichnovsky from assigning or transferring the agreement "without first obtaining thereto the consent of licensor in writing," but continues that "licensor will not unreasonably refuse to consent to the sale or transfer of the license agreement by licensee". A construction that the agreement is terminable at will would be at odds with the concept that Lichnovsky's interest is marketable and with the assurance that Ziebart will not unreasonably block transfer of the franchise. If Ziebart could terminate at will, it could always prevent a purchaser from acquiring Lichnovsky's interest, whether its opposition was reasonable or not, or alternatively could insist upon negotiation of a new and more favorable agreement with a purchaser simply by threatening termination. This view of the matter is reinforced by paragraph 17 which states that "Subject to the provisions of subparagraph (f),[17] this license agreement shall inure to the benefit of and be binding upon heirs, executors, administrators, successors or assigns of each of the parties hereto". While this clause might not alone be persuasive that a marketable interest was created, the reference to subparagraph (f) reinforces the impression that a

[17] Presumably paragraph 7(f), the only paragraph which contains subparagraphs.

marketable interest and, hence, one not terminable at will, was created.[18]

This agreement, drafted by Ziebart's predecessor, sets forth with some specificity and care a number of obligations imposed upon Lichnovsky and expressly reserves certain rights to Ziebart, including "the absolute right to change the formula and name"[19] of the compounds used in rustproofing.

When the instant agreement was drafted, the business of Ziebart's predecessor was in its formative stage and it was seeking licensees. It appears that Lichnovsky, in addition to the financial investment he made, gave up another business in which he was then engaged when he entered upon this new relationship. Despite the use of the word "indefinitely" he did, we think, fairly understand that his franchise under the license agreement could not be terminated except for cause and then only after notice and an opportunity to cure the default.

Any ambiguity in the expression must be construed against Ziebart, as its predecessor drafted the agreement.[20]

Ziebart sought to terminate this agreement for cause. The circuit judge found that it failed to

[18] "Courts are inclined to construe a contract so as not to allow a party to terminate it at will without cause." *Miller v O B McClintock Co,* 210 Minn 152, 160; 297 NW 724 (1941), cited in Gellhorn, *Limitations on Contract Termination Rights—Franchise Cancellations,* 1967 Duke L J 465, 473, fn 25.

[19] 93 Mich App 69.

[20] *Veenstra v Associated Broadcasting Corp,* 321 Mich 679, 691; 33 NW2d 115 (1948); *Bonney v Citizens Mutual Automobile Ins Co,* 333 Mich 435, 438; 53 NW2d 321 (1952); *Ladd v Teichman,* 359 Mich 587, 592; 103 NW2d 338 (1960).

establish the requisite cause. The Court of Appeals affirmed that conclusion. Ziebart does not assign error in that regard.[21]

## B

The word "indefinitely" does not stand alone in the agreement. The license agreement provides that it "shall be in full force and effect indefi- . nitely, *unless* terminated at an earlier date" for cause as provided for in the next succeeding paragraph of the agreement. (Emphasis supplied.) The agreement, thus, even in terms, is not altogether indefinite; it is "indefinite unless". The "unless" provides definition by stating the means by which the licensor can terminate the agreement; it is terminable for cause.

It is not the law that an agreement must have a definite term or duration and that therefore an agreement which does not have a definite term or duration is terminable at the will of either party. A franchise agreement need not, any more than an employment or an agency agreement, have an outside time limit to be valid.

The rule is rather that where the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party

---

[21] Ziebart's statement of questions involved concerns only (a) its assertion that the issue of its right to terminate the agreement was properly before the Court of Appeals; (b) its contention that the parties did not intend that the agreement be terminable by the licensor only if the licensee breached the agreement; and (c) its claim that if the parties intended termination only on the licensee's breach, the agreement "of indefinite term" may nevertheless be terminable at will after the licensee has had a reasonable opportunity to recoup the expenses incurred in preparing to perform its duties under the agreement.

because they have not agreed otherwise.[22] The intent of the parties is determinative.[23] An agreement which the parties have agreed is terminable only for cause, and which is thus by their agreement to endure until so terminated, is legally enforceable until terminated on that ground.

The word "indefinite" is used in different senses. In one sense, the duration of an agreement is indefinite if it does not specify the term, duration, *or manner* of termination. That is the sense in which the word is used in the constructional rule

---

[22] The cases cited by the Court of Appeals all concern situations where the agreement did not specify the time, duration, or manner of termination.

In *Holt v St Louis Union Trust Co,* 52 F2d 1068, 1069-1070 (CA 4, 1931), a property owner sold some lots to a person and agreed as one of the conditions of sale not to sell any other lots on that block for less than a given price. The agreement did not state how long the obligation was to continue. Upon the death of the property owner, the executors of his estate sought to sell the remaining lots at their present market price—a price below the price agreed upon. Since the contract fixed "no period for the duration of [the seller's] obligation"; the Court held that the contract "was intended to last only for a reasonable time".

*Paisley v Lucas,* 346 Mo 827; 143 SW2d 262 (1940), concerned a contract under which the plaintiff would serve as an agent for an insurance company. The contract did not specify the time, duration, or manner of termination. The insurance company became insolvent, went into receivership, and ultimately entered into a re-insurance agreement with another company. When the second insurance company attempted to cancel any contractual relationship with the agent, he filed suit, claiming that the contract was for life employment and that the second company had assumed the contract. The court held that since there was no evidence that the original parties had intended this contract to be for life, "the employment was to continue only so long as it was mutually satisfactory to the parties". *Id.,* p 842.

In *Adkisson v Ozment,* 55 Ill App 3d 108, 112; 12 Ill Dec 790; 370 NE2d 594 (1977), a city entered into an agreement with the water board association of a neighboring county to provide water service to that county. Here again, the agreement made no provision for termination. The Court held that, absent such a provision, the parties could terminate the agreement after a "reasonable time".

[23] "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v Groomes, supra,* 218; *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 209; 220 NW2d 664 (1974).

relied on by Ziebart. The rule is generally applicable in such a case because neither party has expressed an agreement to be bound any longer than he wishes to maintain the agreement. If the parties had wished to bind each other for a longer period, they were free to so specify at the time they made the agreement.

But an agreement can be indefinite in another sense. In this second sense the duration of an agreement is indefinite if the precise date of its termination cannot be calculated at the time the agreement is entered into, even though the conditions under which it is to terminate are clearly spelled out. When an agreement is only indefinite in this second sense, a court may not properly supply a durational term. The parties have already done so.[24]

An agreement which fails to provide for the term, duration, or manner of termination is terminable at the will of either party not because the word "indefinitely" appears in the agreement or because the term or duration of such an agreement can properly be characterized as indefinite but because there is no agreement concerning term, duration, or manner of termination, and it is generally thought to be reasonable in such a case to infer that the parties intend that the agreement be terminable at the will of either party.

Where, however, there is an agreement concerning the manner of termination, the agreement is enforceable unless terminated in that manner although there is no fixed time for termination, and the term or duration is consequently indefinite in

---

[24] An agreement that is to continue for the life of one of the parties is indefinite in this sense because it cannot be determined, at the time the agreement is made, when the party will die. Such an agreement, although indefinite in this sense, is not terminable at will.

the second sense. Here the agreement acknowledges *that* kind of indefiniteness by stating that the term of the agreement is "indefinite" *unless* (and until) the agreed-upon method of termination is invoked, resulting in termination of the agreement and thereby definitely fixing its term.

In sum, an agreement without a fixed term or duration but which provides nevertheless that it is terminable only for cause has indeed an indefinite term or duration, but a provision that the agreement continues unless terminated for cause is enforceable. Although the agreement is, in one sense, "indefinite" as to term or duration, it is not the kind of agreement with an "indefinite term" subject to the rule of construction that such an agreement is terminable at will.

## III

The concern of the Court of Appeals that this license agreement might last in perpetuity is misplaced.[25] There are relatively few enterprises that

[25] The Court of Appeals made reference to Professor Williston's statement that contracts will not often "be interpreted as calling for perpetual performance". 1 Williston, Contracts (3d ed), § 38, p 113, cited in 93 Mich App 70-71. Neither Professor Williston's statement nor the cases cited in the third edition in support conflict with the view here expressed. Professor Williston states that policies regarding indefinite contracts only come into play when the parties have *not* agreed concerning the manner in which the agreement will come to an end:

"In such a case it is necessary first to interpret the promise in the light of all surrounding circumstances, and with reference to its subject matter, in order to *ascertain the intention of the parties.* It may be that so interpreted the promise means perpetual performance; but it may mean performance is to begin in a reasonable time or to be continued for a reasonable time; or it may mean that the time was simply left indefinite with the expectation that the parties might continue performance as long as they pleased *or that they would subsequently settle that term of the promise. It is only in this last class of cases that the question of indefiniteness can arise.*

\* \* \*

last even fifty or a hundred years, let alone forever. Just as an agreement for life employment (terminable for cause) is subject to the vicissitude of human mortality, so too a franchise agreement is subject to the vicissitudes of the market. Advances in the art or in technology, competition of other processes, consumer preferences, all place practical limitations on the duration of most franchises.

Ziebart's business will in time change. At some point, that which Ziebart and Lichnovsky agreed upon may no longer be viable. The life of the subject matter of their agreement will be at an end. Neither party will find it profitable, or, alternatively, rustproofing processes may have so changed that perhaps the agreement should not be deemed to include or extend to the changed processes.

"[C]ourts will, where the contract contemplates a single act or exchange of acts, *unless the circumstances show a contrary intention,* interpret a promise which does not in terms state the time of performance as intending performance in a reasonable time." (Emphasis supplied.) Williston, pp 112-113.

The cases cited are in accord. In *Town of Readsboro v Hoosac Tunnel & W R Co,* 6 F2d 733 (CA 2, 1925), a town contracted with a railroad shipping company to share the cost of building and maintaining a bridge to be used by both. The agreement did not provide for the manner in which it was to terminate. When it became impractical for the shipping company to continue using the bridge, it refused to pay for any further maintenance. Absent a termination provision, the court held that the parties' purpose had been to share the maintenance costs only for as long as the company continued to use the bridge.

In *McCaffrey v B B & R Knight, Inc,* 282 F 334 (D RI, 1922), it appeared from the complaint that the defendant agreed to purchase barrels from the plaintiff "as long as the said plaintiff made the same". The defendant agreed to purchase "30 barrels of said size every week thereafter". The court held the contract to be unenforceable because it was of the opinion that a promise that is cancellable at will by one party creates only an illusory obligation, and the contract was void for want of consideration. In the instant case, the parties did not agree that the contract was to be terminable at the will of either one.

The absence of a specific provision for termination upon the conclusion of viability because of such changed circumstances does not justify the licensor in terminating while the process is still viable.

The question whether and when a franchise should be deemed terminated because the circumstances under which the parties contracted have so far changed that they can no longer be expected to continue to have obligations to each other does not arise until that in fact occurs.

This litigation arose within less than 15 years after the license agreement was entered into, and it is now not quite 20 years since the franchise was granted. The concern expressed by the Court of Appeals about perpetual agreements might need to be addressed in respect to this license agreement 20 or 40 years from now, or sooner or later, but does not justify termination of this agreement at this time.

## IV

Our conclusion that the license agreement was not an agreement terminable at will makes it unnecessary[26] for us to consider whether the Mis-

[26] The Missouri rule does not supersede an express provision concerning term, duration, or method of termination.

The Court of Appeals statement of the Missouri rule and the cases cited by it indicate that the rule is a limitation fashioned by some courts to prevent a manufacturer or licensor from exercising an unrestricted power to terminate an agreement which does not specify time or duration or the manner of termination under circumstances which would create undue hardship for the other party.

The Missouri rule has no application to an agreement which is not terminable at will by the licensor. Because the question need not be decided, we need not consider what would be an appropriate judicial response if a licensor sought to reserve or exercise a harsh power of termination.

souri rule, so-called, should be incorporated into our jurisprudence.

Ziebart raised issues in the Court of Appeals which have not been resolved. Accordingly, we remand to the Court of Appeals for further proceedings not inconsistent with this opinion.

Reversed and remanded to the Court of Appeals.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.