David LONG, Plaintiff

v.

QUALITY COMPUTERS AND APPLICA-
TIONS, INC.; Dan Verkade; Joseph
Gleason; Defendants.

SENSIBLE SOFTWARE, INC., Plaintiff

v.

David LONG, Defendant.

Civ. A. Nos. 1:CV–93–802, 1:CV–
94–190, MDL 999.

United States District Court,
M.D. Pennsylvania.

June 14, 1994.

*MEMORANDUM*

CALDWELL, District Judge.

Pending are two cases, *Long v. Quality Computers & Applications, Inc., et al.,* No. 93–802 (M.D.Pa.) and *Sensible Software, Inc. v. Long,* No. 94–190 (M.D.Pa.) (No. 93–74330 (E.D.Mich.)). The Judicial Panel on Multi-district Litigation has assigned the Michigan action to this court for pretrial proceedings and has designated the entire matter MDL Docket No. 999.

We are considering the motion of David Long, defendant in *Sensible Software, Inc. v. Long,* to transfer that action to this court for trial pursuant to 28 U.S.C. § 1404. Additionally, both Sensible Software, Inc. ("Sensible"), and Quality Computers & Applications, Inc. ("Quality"), have moved that, should we transfer the Michigan action to this court for trial, we hold separate trials in the two cases and stay trial in *Long v. Quality Computers & Applications, Inc., et al.* Finally, in *Sensible Software, Inc. v. Long,* Sensible seeks partial summary judgment and, in *Long v. Quality Computers & Applications, Inc., et al.,* Quality seeks judgment on the pleadings with regard to Counts III, IV, and V.

I. Facts and Procedural History

Our description of the facts will be brief, although we will provide further details as they become necessary.

The plaintiff in *Long v. Quality Computers & Applications, Inc., et al.* is David Long, a Pennsylvania resident who developed a computer application known as "Sensible Grammar." The program scans documents created on Apple II and Macintosh computers and alerts the user to the presence of grammatical or stylistic errors. Plaintiff licensed "Sensible Grammar" to C & R Software, Inc., a Michigan software distribution company. A short time later, C & R Software asked that Sensible Software, Inc., be substituted in the licensing agreement with Long and he agreed. The licensing agreement remained the same, including a provision that the contract could not be assigned without the written consent of the non-assigning party. Sensible Software first registered a copyright for the software in Long's name and then marketed the program to the public.

In August, 1991, Roger Tuttleman, Sensible Software's vice-president, called Plaintiff and informed him that the Sensible Grammar licensing agreement had been transferred to Quality. Plaintiff alleges that neither Sensible Software nor Quality sought his permission for the transfer.

In 1992, Quality began selling another grammar-checking program, "Time–Out Grammar," apparently produced by Defendant Dan Verkade. Plaintiff alleges that Time–Out Grammar is substantially similar to Sensible Grammar and includes a number of "dummy variables" originally found in Sensible Grammar. Dummy variables are additions to computer programs that have no useful function except to demonstrate misappropriation. Plaintiff sought to terminate the licensing agreement in May, 1992. He alleges that, notwithstanding provisions of the licensing agreement, Quality continues to sell Sensible Grammar and pay him less than the proper royalty. He also claims that he is due royalties from sales of Time–Out Grammar.

The plaintiff in *Sensible Software, Inc. v. Long* is Sensible. It asserts an action for breach of contract based on Long's termination of the licensing agreement in 1992.

*Long v. Quality Computers & Applications, Inc., et al.* began with the filing of a complaint in the Middle District of Pennsylvania on May 28, 1993. *Sensible Software, Inc.* began with the filing of a complaint in the Eastern District of Michigan on August 27, 1993. On Mr. Long's motion, the Judicial Panel on Multidistrict Litigation transferred the Michigan case to this court for pretrial proceedings on February 3, 1994.

## II. Law and Discussion

### A. *Long's Motion to Transfer Michigan Case to this Court for Trial*

 Mr. Long asks that we transfer the Michigan case to this court for trial pursuant to 28 U.S.C. § 1404. We have authority to do so under Rule 14 of the Rules of Procedure for the Panel on Multidistrict Litigation. *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 820 (3d Cir.1982). We are to consider the question according to the well-established standards governing motions for transfer under 28 U.S.C. § 1404.

Mr. Long argues that the two cases are so inextricably intertwined that judicial efficiency and convenience of the parties require that the cases both be tried in the Middle District of Pennsylvania.

 The United States Court of Appeals for the Third Circuit has described certain factors a district court should consider, although the decision to transfer remains in the sound discretion of the trial court. *In re Grand Jury,* 821 F.2d 946 (3d Cir.1987). The factors include (1) plaintiff's choice of forum, (2) defendants' residences; (3) potential witnesses' residences, (4) the situs of events giving rise to the lawsuit, (5) the location of any records or documents, and (6) which state's law will govern the case. *See Holdsworth v. General Motors Corporation, et al,* No. 87–2034, 1987 WL 18416 *2, 1987 U.S. Dist. LEXIS 9243 *4 (E.D.Pa. October 7, 1987).

> It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice "... should not be lightly disturbed."

*Shutte v. Armco Steel Corp.,* 431 F.2d 22 (3d Cir.1970), *quoting Ungrund v. Cunningham*

*Bros., Inc.,* 300 F.Supp. 270, 272 (S.D.Ill. 1969).

### 1. *Plaintiff's Choice of Forum*

■ As noted, the plaintiff's choice of forum is to be accorded significant weight. Here, Sensible has chosen to litigate in the Eastern District of Michigan. Mr. Long characterizes that choice as one made to force him to litigate far from home, but it is, nonetheless, a choice left to Sensible.

### 2. *Defendant's Residence*

As noted, Mr. Long is a Pennsylvania resident and a Michigan trial would force him to travel to that jurisdiction.

### 3. *Potential Witness' Residences*

As we noted in our Memorandum and Order of August 5, 1993, the great majority of witnesses to be called are Michigan residents. Indeed, the only likely witness who is located in the Middle District of Pennsylvania is Mr. Long.

Mr. Long argues that the same witnesses will be called in both cases, thus underscoring their common nucleus of fact and law. While this is to some extent true, it is not dispositive of this question. As Sensible points out, many of the witnesses are no longer employees of Sensible or Quality and are not, as Michigan residents, subject to compulsory process in Pennsylvania. Further, the cost to Sensible of bringing several witnesses to Pennsylvania is greater than the cost to Mr. Long of travelling to Michigan.

### 4. *Situs of Events Giving Rise to the Lawsuit*

We reach no determination with regard to the situs of events in the *Sensible Software, Inc. v. Long* case. The contract was signed in Michigan but, if there was one, the breach occurred in Pennsylvania.

### 5. *Location of Any Records or Documents*

As we indicated in our previous Memorandum and Order, most of the relevant documents are apparently in Michigan, but Sensible has made no showing that they are so voluminous that it would work a hardship to bring them to Pennsylvania for a trial.

### 6. *Governing Law*

The licensing agreement calls for Michigan law to be applied to any disputes. However, as we have noted, there is no reason a Pennsylvania federal court could not properly apply Michigan contract law.

While we agree that a transfer might, in certain regards, serve the interests of efficiency, we must conclude that Mr. Long has not given appropriate weight to Sensible's choice of forum and the availability of compulsory process for witnesses.[1] Therefore, weighing the appropriate factors and giving due consideration to Sensible's choice of forum, we will deny Mr. Long's motion to transfer.

This decision renders moot Quality's cross-motion to separate the trials of the two cases in the event of a transfer and we will dismiss that motion.

### B. *Sensible's Motion for Summary Judgment*

■ In *Sensible Software, Inc. v. Long,* Sensible seeks partial summary judgment that Mr. Long's attempted termination of the licensing contract was a violation of the terms of that agreement and therefore invalid.

Summary judgment is appropriate when there remain no genuine issues as to any material facts and judgment may be entered as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a movant submits that there is no genuine issue as to a material fact, its opponent must do more than "simply show that there is some metaphysical doubt as to the material facts."

---

1. Further, although it plays no real part in our determination regarding transfer, we note that the *Long v. Quality Computers & Software* case is scheduled for trial in July, 1994. It is possible that resolution of that case would help to resolve the issues in the Michigan case.

*Matsushita Electric Industrial Co., Ltd., et al v. Zenith Radio Corp., et al,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The licensing agreement in effect at the time of Mr. Long's termination was signed on April 24, 1985. *See* Exh. B to Sensible's Brief in Support. With regard to termination, that agreement provides that:

> Except with respect to payment breaches, either party shall have the right to terminate this agreement in the event that the other party commits a material breach of its obligations. However, intent to terminate must first be given by a written notice, sent by certified mail to the breaching party, that sets forth the details of the breach. Termination shall become effective 90 days from the date that the notification of intent to terminate was mailed, unless the breaching party has corrected the breach prior to that 90–day period....

*See* Exh. B. When Mr. Long sent his notice of intent to terminate, on May 11, 1992, he named the sections of the licensing agreement he contended Sensible had breached but he did not describe in any further detail what actions constituted those breaches.[2]

Sensible now argues that the termination clause in the licensing agreement required a more detailed description of the alleged breaches because the drafters intended that the allegedly breaching party have an opportunity to cure the alleged defects. Sensible argues that Mr. Long's notice did not give the required detail and was, therefore, ineffective.

By express provision of the licensing agreement, Michigan law governs interpretation of this contract. *See* Exh. B.

Michigan courts have held that, where a contract contains a specific provision for termination, a termination failing to adhere to that provision is ineffective and the agreement remains enforceable. *Lichnovsky v. Ziebart International Corp.,* 414 Mich. 228, 324 N.W.2d 732, 739–40 (1982). Further, in deciding a case involving a contract, the court must give primary consideration to ascertaining the intent of the parties when they drafted the agreement. *McIntosh v. Groomes,* 227 Mich. 215, 198 N.W. 954 (1924).

We believe it to be clear from the terms of the contract and the record in this case that both Mr. Long and Sensible intended that the party terminating the contract give the other party sufficient notice so that that party could cure any deficiencies in its performance. Mr. Long testified in his deposition that:

> Q Why does a written notice need to set forth the details of the breach?
>
> A So that the breach can be corrected within 90 days.

Deposition of David Long at 42.

While we might agree with Sensible that Mr. Long's termination notice, viewed in a vacuum, was insufficient, we take note of Mr. Long's description of the various communications between the parties in the months preceding the notice.

In his deposition, Mr. Long testified that, in 1992, Sensible officials had contacted him and asked him to help develop a new grammar-checking program. Negotiations were not fruitful. In his deposition, Mr. Long asserted that Joseph Gleason, the new owner of Sensible, had told him that if Mr. Long refused to work on the new application, he would provide the Sensible Grammar source code to another programmer.[3] Long Depo.

---

**2.** After explaining that Mr. Long intended to terminate the agreement, the letter noted:

> The following are the relative [sic] Clauses.

| | | |
|---|---|---|
| III. | EXCLUSIVE LICENSE | |
| | Clause A | |
| | Clause B | |
| IX. | CONVERSIONS | |
| | Clause A | |
| | Clause B | |
| X. | ROYALTIES | |
| | Clause D | |
| XI. | ACCOUNTING | |
| | Clause A | |
| XV. | TERMINATION | |
| | Clause A | |
| | Clause B | |
| XVII. | GENERAL | |
| | Clause B | |
| | Clause H | |

*See* Exh. D to Sensible's Brief in Support.

**3.** Source code is the series of commands in a computer program that instructs the computer.

at 122. Mr. Long testified that he had a meeting with Mr. Gleason in September, 1991, to discuss Mr. Long's concerns about the acquisition of Sensible by Quality and his belief that the transfer of rights in Sensible Grammar violated the licensing agreement. Long Depo. at 109–111.

Mr. Long's notice of intent to terminate is easier to interpret given that history. For example, section III(A) and (B) refer to the exclusive rights vested in Sensible under the agreement, and refer the reader to another section regarding dissemination of the source code. Section IX(A) and (B) refer to the circumstances in which Sensible could legitimately provide the Sensible Grammar source code to a third party in order for that party to develop a conversion of the product.[4]

We have held that the intent of the parties was that a termination notice give a reasonable opportunity to cure. There is a factual question with regard to whether Sensible was previously on notice of Mr. Long's grievances. If so, the notice of intent to terminate was sufficient to allow a cure. Given this remaining issue of material fact, we can not grant Sensible's motion.

### C. *Qualities Motion for Judgment on the Pleadings on Counts III, IV, and V*

In *Long v. Quality Computers & Applications, Inc., et al.*, Defendants move for judgment on the pleadings with regard to Counts III and IV and part of Count V of the amended complaint. *See* Fed.R.Civ.P. 12(c).

Those counts recite common law claims of tortious interference with prospective contractual opportunities (Count III), unjust enrichment (Count IV), and misappropriation of trade secrets (Count V). Defendants now argue that those causes of action are preempted by the federal Copyright Act of 1976. 17 U.S.C. § 301.

■ It is true that many common-law causes of action are preempted by § 301. Courts have applied a two-part test to determine whether a given claim is preempted:

(1) does the subject matter of the claim fall within the subject matter of copyright law? and (2) are the rights to be vindicated by the common-law claim equivalent to any granted under the Copyright Act? *See Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987).

There is no dispute between the parties with regard to the first part of the test. It is well-established that computer source codes may be protected by copyright. *Apple Computer, Inc. v. Franklin Computer Corporation*, 714 F.2d 1240 (3d Cir.1983). The question with regard to this motion is whether any of the challenged claims is the equivalent of those allowed by the Copyright Act.

The Copyright Act provides a number of exclusive rights: a right to reproduction of the work, a right to prepare derivative works, a right to distribute a work, and a right to display a work. 17 U.S.C. § 106.

■ Count III of the amended complaint is entitled "Tortious Interference With Prospective Contractual Opportunities." It claims that, by continuing to improperly sell Sensible Grammar and Time Out Grammar, Defendants have prevented Mr. Long from entering into contracts with others, presumably contracts to sell those products. Defendants argue that the allegation in this count is essentially that Defendants have improperly reproduced Sensible Grammar and that they have improperly prepared a derivative work, Time Out Grammar. Plaintiff argues that the claim has an extra element that makes it distinct from the Copyright Act.

It is true that such an extra element could avoid preemption. *See Del Madera Properties*, 820 F.2d at 977. However, our review of Count III indicates that it does not have an extra element as that phrase is used in the case law. In *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), the court affirmed the dismissal of a similar state-law claim noting that

---

**4.** A conversion of a computer program is a version adapted for use on a different computer system. For example, the word-processing software Wordperfect was originally developed for use with the DOS operating system. It has been converted for use with Microsoft Windows and Apple Macintosh systems.

the fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party ...

*Id.* at 201. In the instant case, Mr. Long asserts that

[t]he acts of defendants Quality Computers, Gleason, Verkade and Beagle Bros. and their ongoing unlawful sale of Sensible Grammar and/or Time Out Grammar software, have the purpose and intent of harming plaintiff Long by preventing him from entering into a contractual relationship with any other party.

Amended Complaint at ¶ 42. Clearly, the conduct complained of is precisely the same as in Count I, the copyright-infringement claim. The alleged effect of the conduct is, perhaps, different; but we must find that Count III states a claim that is the equivalent of rights protected by 17 U.S.C. § 106. We will dismiss Count III.

Count IV of the Amended Complaint is entitled "Quasi–Contract/Unjust Enrichment." It claims that Defendants have enjoyed an "unwarranted benefit" from their receipt of revenues from the "unlawful sale of copyrighted material, Sensible Grammar, and the unlawful sale of Time Out Grammar, which infringes upon copyrighted material ..." Amended Complaint at ¶ 46.

We will not dwell long on this issue. Two of the rights specifically protected by § 106 are the rights to reproduce copyrighted material and the right to create derivative works from copyrighted material. Count IV clearly seeks to aver an equivalent state-law cause of action and we will dismiss it. *See Del Madera Properties,* 820 F.2d at 977.

Count V is entitled "Misappropriation of Trade Secrets." It alleges that:

Defendant Gleason provided these source codes to Defendant Verkade, in order to facilitate the unlawful and infringing development of Time Out Grammar. Quality Computers has misappropriated these trade secrets through the manufacturing and sale of Time Out Grammar.

Amended Complaint at ¶ 50. Defendants argue that this claim, too, is preempted by § 301.

Courts recognize two distinct types of misappropriation of trade secrets: those based upon the use of a plaintiff's work and those based upon the disclosure of material that a defendant has a duty to keep confidential. *See Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693, 716–19 (2d Cir. 1992). Typically, claims of the former type are preempted while claims of the latter type are not, because they contain the extra element of violation of a duty. *Id.*

We read Count V to allege misappropriation under the disclosure theory against Defendant Gleason. It alleges misappropriation under the use theory against Quality.

We conclude that the claim against Quality and Mr. Verkade is preempted because it effectively charges that Quality reproduced the protected material, a claim already encompassed in the copyright-infringement claim, and that Mr. Verkade merely received and then used the source code. The claim against Mr. Gleason, however, is different. It alleges that he unlawfully disclosed Mr. Long's source code to Defendant Verkade in violation of the licensing agreement between Mr. Long and Sensible. There is no corresponding right within § 106 of the Copyright Act and this claim, therefore, contains the extra element necessary to avoid preemption. Thus, we will dismiss Count V only as it pertains to Quality and Dan Verkade.

We will issue an appropriate order.

### ORDER

AND NOW, this 14th day of June, 1994, upon consideration of the motions of the parties, it is ordered that:

1. Defendant David Long's motion to transfer *Sensible Software, Inc. v. Long* is denied.

2. The cross-motion of Quality Computers & Applications, Inc., in *Sensible Software, Inc. v. Long* to separate the trials in the event of transfer is dismissed as moot.

3. The motion for partial summary judgment of Sensible Software, Inc., in *Sensible Software, Inc. v. Long* is denied.

4. The motion for judgment on the pleadings of Defendants in *Long v. Quality Computers & Applications, Inc., et al.* is granted in part:

(a) Count III of the Amended Complaint in *Long v. Quality Computers & Applications, Inc., et al.* is dismissed pursuant to Fed.R.Civ.P. 12(c).

(b) Count IV of the Amended Complaint in *Long v. Quality Computers & Applications, Inc., et al.* is dismissed pursuant to Fed.R.Civ.P. 12(c).

(c) Count V of the Amended Complaint in *Long v. Quality Computers & Applications, Inc., et al.* is dismissed as against Defendants Quality Computers & Applications, Inc., and Dan Verkade.

5. In all other respects the motion for judgment on the pleadings of Defendants in *Long v. Quality Computers & Applications, Inc., et al.* is denied.